ARMSTRONG v. MARTIN.

No. 32684.   Oct. 3, 1950.

Rehearing Denied Nov. 21, 1950.

*223 P. 2d 1072.*

V. E. Stinchcomb, of Oklahoma City, for plaintiff in error.

V. P. Crowe, of Oklahoma City, and Peyton E. Brown, of Blackwell, for defendant in error.

JOHNSON, J. In this case it appears that on the 7th day of December, 1940, Charles O. Armstrong, appellant herein, was adjudged an incompetent by the county court of Kay county, and O. B. Martin was appointed guardian of his person and estate.

Prior to the time appellant was adjudged incompetent, he and his mother, Amanda J. Armstrong, were the owners of 160 acres of land located in Kay county, Oklahoma, each owning a one-half interest therein. Thirteen acres of the land was situated on the east side of Highway No. 77, the balance on the west side. This land they thereafter traded to John W. Dyckes for an apartment house in the city of Edmond, plus a cash consideration paid them of $500.

Both Mrs. Armstrong and appellant sought to set this conveyance aside on the ground of incompetency of appellant to execute a deed and because of fraud practiced upon Mrs. Armstrong to induce her to sign the deed. Mrs. Armstrong and appellant, prior to the adjudication of incompetency, consult-ed with Andrew J. Fraley, an attorney in Oklahoma City, relative to bringing an action to set aside this conveyance and to recover the land traded. Mr. Fraley advised that it would be necessary in order to bring the action to have appellant adjudged incompetent. It was then agreed by all parties that such proceeding should be taken.

O. B. Martin, guardian, shortly after his appointment entered into a contract with Fraley and Sherman, attorneys, employing them to bring suit for and on behalf of the incompetent to recover his interest in the property traded and agreed to pay them an attorney fee on a contingent basis of 50 per cent of the amount recovered. The contract was approved by the county court.

Fraley and Sherman then brought suit in behalf of Mrs. Armstrong as well as in behalf of appellant through his guardian to recover the property, in which suit they were successful.

On the 11th day of February, 1942, the guardian, through Fraley and Sherman as attorneys, obtained an order of sale authorizing him to sell appellant's interest in that part of the land lying west of Highway 77 at private sale, and after due notice the interest of appellant in this land was sold to Everett W. Baird for the sum of $7,100. The land was covered by a mortgage in the sum of $5,754, one-half of which, or the sum of $2,877, was charged against the interest of appellant in the land, which amount the purchaser assumed and agreed to pay and tendered a cashier's check to the guardian in the sum of $4,223 in payment of the balance. The sale was thereafter confirmed by the county court. Thereafter, and upon an order of sale having first been obtained from the county court, the guardian sold appellant's interest in the 13-acre tract lying east of Highway 77 at private sale to Andrew J. Fraley, who was one of the attorneys representing the guardian in the guardianship proceeding, for the sum of $450. This sale was also confirmed by the county court. Mr. Fraley prior thereto

had procured a deed from Mrs. Armstrong for her interest in this tract.

In the meantime appellant was restored to competency by the county court of Kay county and the guardian, O. B. Martin, after having been notified of this order, filed in the county court his final account and asked that he be discharged as guardian.

Appellant after having been restored to competency filed a protest against the allowance of this account. The main items attacked by him consist of attorney fee paid Fraley and Sherman in the sum of $2,368.64, guardian fee paid to O. B. Martin in the sum of $450 and $281.25 commission paid to real estate agent for furnishing a purchaser of the land sold at guardian's sale. The challenge to the payment of the attorney fee and guardian fee is based mainly upon the theory that the order adjudging appellant incompetent and the order made by the county court approving the attorney fee contract entered into between the guardian and Fraley and Sherman, and the order authorizing the sale of the land were obtained through fraud perpetrated upon · the court by Fraley and Sherman and the guardian Martin in obtaining these orders. The challenge against the payment of the commission to the real estate agent is based on the theory that there was no authority in law for the allowance of the payment of such commission.

The county court sustained the contention of appellant and determined that the orders complained of had been obtained through fraud perpetrated upon the court, but held that it was without jurisdiction in this proceeding to set aside such orders and refused either to approve or disapprove the account.

The guardian appealed from this order to the district court of Kay county where upon hearing de novo the court reversed the order of the county court and allowed and approved the account except as to the sum of $281.25 commission paid the real estate agent

and surcharged the account of the guardian in that amount.

The case is here on appeal from this judgment. It is assigned, among other things, as error that the court erred in not surcharging the guardian with the entire attorney fee paid to Fraley and Sherman and the guardian fee paid to Martin for the reason as found by the county court as hereinbefore stated.

There is no substantial evidence to sustain the contention that the order adjudging appellant incompetent and the order authorizing the sale of the land were obtained through fraud. It is, however, contended by appellant that the order adjudging him incompetent and appointing a guardian over his person and estate is void for the reason that the petition does not allege that appellant was insane or mentally incompetent to manage his property as provided by 58 O. S. 1941 §851. While the petition does not so allege, it does allege that he was an incompetent person. We think this allegation sufficient to authorize the adjudication and to appoint a guardian of his person and estate at least against collateral attack. The phrases, "incompetent," "mentally incompetent," and "incapable," as used in Title 58 O. S. 1941 §§851 and 852, mean any person who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable unassisted, to properly manage or take care of his property, and by reason thereof would likely be deceived or imposed upon by artful and designing persons. Carney et al. v. Brown, 110 Okla. 165, 237 P. 111.

It is also argued that the appointment of Martin as guardian is void for the reason that it was made upon the reading of the petition and without taking any evidence. This contention cannot be sustained. The appointment of a guardian by the county court imports jurisdiction of the court so to do, and it will be inferred from that fact that such appointment has been made that all of the facts necessary to vest the court with jurisdiction to make the

appointment have been found to exist before the same was made, and such order so made is not subject to collateral attack. Holmes v. Holmes, 27 Okla. 140, 111 P. 220; Hathaway et al. v. Hoffman et al., 53 Okla. 72, 153 P. 184; Tucker v. Leonard et al., 76 Okla. 16, 183 P. 907.

What is above said also disposes of the contention that the order authorizing the guardian to sell the land is void for the reason that no competent evidence was offered at the hearing to sustain the allegation of the petition as to the necessity for making the sale. The petition alleged all the jurisdictional facts necessary to confer jurisdiction upon the court and to make the order. It will therefore be presumed that competent evidence was introduced at that hearing sufficient to justify the making of the order, and under the authority above cited such order may not be collaterally attacked.

Appellant next contends that the evidence shows that the order of the county court approving the attorney fee contract entered into between the guardian O. B. Martin and Fraley and Sherman was obtained through fraud perpetrated upon the court in order to induce it to make the order. In this connection the record shows that Mrs. Armstrong testified that prior to the time appellant was adjudged incompetent she entered into a written contract with Mr. Fraley whereby she employed him to bring and prosecute an action in her behalf and in behalf of appellant to recover the land here under discussion for a cash fee of $500.

Appellant in this proceeding also so testified. Their testimony in this respect was corroborated by Mrs. Roach who had signed the contract as a witness. Mrs. Armstrong further testified that shortly after this contract was executed Mr. Fraley requested that she return her copy of the contract in order that he might correct a mistake in the description of the land; that she did so, and that upon several occasions thereafter she demanded the return of the

copy, but that Mr. Fraley refused so to do. She further testified that the written contract provided that in lieu of the payment of the $500 cash she might execute a deed to him to her interest in the 13-acre tract lying east of the highway in settlement of attorney fee; that after the litigation had ended she did deed to Mr. Fraley her interest in this land and again requested that the contract be returned to her; that Mr. Fraley then pulled a sheet of paper out of his pocket and tore it up and stated to her that this was the contract; that it had been fully performed and it no longer existed. This testimony is not denied by either Fraley or Sherman. Mrs. Armstrong further testified that at the time she executed her deed to Mr. Fraley she had no knowledge that a new attorney fee contract had been entered into between the guardian and Fraley and Sherman. Mr. Martin testified that he at one time had in his possession an attorney fee contract entered into between Mrs. Armstrong and Fraley, but that he afterwards returned the contract to Fraley.

Assuming that this evidence is sufficient to establish that the order of the county court approving the contract was obtained through fraud perpetrated upon the court, such question could not properly be raised in that court in this proceeding. The county court in settling the final account of the guardian was without jurisdiction to review any prior final order of that court and set the same aside on the ground that it was obtained through fraud. Such proceeding is one of equitable cognizance for determination in a court exercising equitable powers. The county court does not have such powers. Twin State Oil Co. v. Johnson et al., 72 Okla. 174, 179 P. 605; In re Mize's Guardianship, 193 Okla. 164, 142 P. 2d 116; Twine, Adm'r, v. Edwards et al., 196 Okla. 382, 165 P. 2d 143.

It is also argued by counsel for appellant in this case that since the evidence shows that the guardian, O. B. Martin, was himself an attorney he had no right to employ counsel to in-

stitute and prosecute the action for recovery of the land. We do not agree. Mr. Martin was not required under the law to institute and prosecute the action for the recovery of the land free of charge as one of his duties as guardian. He was not required under the law to act in such capacity in addition to his duties as guardian. Estate of Wah-Kon-Tah-He-Ump-Ah, 128 Okla. 179, 261 P. 973; In re Belknap's Estate, 12 W. 2d 643, 123 P. 2d 358.

Another objection urged by appellant to the account is that since Mr. Fraley was employed as his attorney to recover the land and represented the guardian in the sale of the land, he had no right under the law to purchase appellant's interest in any part of the land. We fail to see upon what theory this issue is injected into this proceeding. It has no bearing upon the accounting feature of the case. Appellant is not seeking to set aside this sale, but, on the contrary, after having been restored to competency has ratified the sale. It certainly furnishes no ground for surcharging the guardian's account.

The contention of appellant that the entire guardianship proceedings are void for the reason that only one surety signed the guardian's bond is without merit. Johnson v. Pettee et al., 138 Okla. 208, 281 P. 276.

It is finally contended that the guardian paid Fraley and Sherman fees in excess of the amount provided for by the contract, and that his account should be surcharged in the amount of such excess. With this contention we agree.

The evidence shows that appellant's interest in that part of the land lying west of the highway was sold for $7,100. This land was encumbered with a mortgage as heretofore stated in this opinion, one-half of which, or $2,877, was charged against the interest of appellant in the land. After making this deduction, appellant received for his interest in this tract the sum of $4,223. His interest in the 13-acre tract lying east or the highway was sold for the sum of $450. There was a crop of wheat grown on the land, which wheat was thereafter harvested and sold by the guardian for the sum of $604.28, making a total recovery for appellant in the sum of $5,277.28. The guardian paid Fraley and Sherman as attorneys' fee 50 per cent of this amount, or the sum of $2,638.64. The amount so paid is not based on the net amount recovered as contemplated by 5 O. S. 1941, §7, but was based on the gross amount recovered. In arriving at the net amount of recovery, the expenses and cost of the entire proceeding should be taken into consideration and deducted from the gross in arriving at the net. Kerzee v. Aultman (Tex. Civ. App.) 291 S. W. 293. The record discloses that the guardian in order to reduce the estate of appellant to cash conducted two separate guardian's sale proceedings. In one of these proceedings he became the purchaser of appellant's interest in the land. The main purpose of the sale of the land as shown by the evidence in this case was to obtain the cash in order to pay the attorney fee due Fraley and Sherman. No other reason is shown to have existed for making the sale. In these circumstances we think the entire expense and cost of this proceeding should be deducted from the gross amount recovered to arrive at the net amount that was recovered for appellant.

The guardian paid out of the funds of appellant as shown by his account expenses and costs growing out of the various court proceedings the following items:

| | |
|---|---|
| Amount paid by Dyckes on mortgage and refunded by ward | $ 203.75 |
| Cost of taking depositions in the original action | 23.84 |
| Expert testimony | 37.50 |
| Cost in combining wheat sold by guardian and included in the amount of recovery | 71.50 |
| Cost for plowing and seeding the ground to wheat | 50.00 |
| Premiums paid on guard- | |

ian's bond _____ 81.81
Cost incurred in the county court in guardianship proceedings _____ 55.00
Guardian's fee _____ 450.00
Real estate agent's commission paid _____ 281.25

Making a total of _____$1,254.65

which amount should be deducted from the sum $5,277.28, the gross amount recovered, leaving net amount of recovery in the sum of $4,022.63, 50 per cent of which amount, or $2,011.31, constitutes the amount of attorney fee which should have been paid Fraley and Sherman under their contract. The payment made was excessive in the sum of $627.33. However, $281.25 of this amount had already been surcharged against the guardian on his account, which would leave a balance of $346.08 in which sum an additional surcharge should be made against the account, making a total surcharge of $627.33.

The judgment is modified by directing that an additional surcharge be made against the guardian's account in said sum, and as so modified is affirmed.

DAVISON, C.J., and WELCH, CORN, and O'NEAL, JJ., concur. GIBSON, J., dissents.